Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8203 | DATE | 5/24/2004 |
| CASE TITLE | | Jordan vs. CTA | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court grants the CTA's motion for summary judgment in its entirety. Summary judgment is granted in favor of the CTA as to Jordan's Title VII and Section 1981 claims. Status hearing set for 6/9/04 is stricken. Jury Trial set for 8/2/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 25 2004 | |
| ✓ | Docketing to mail notices. | | | 58 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 2004 MAY 24 PM 2:29 | date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHELLY L. JORDAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 8203 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Shelly Jordan filed a Second Amended Complaint ("SAC") against the Chicago Transit Authority ("CTA"), alleging that the CTA violated his civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. §§ 1981, 1983,[1] by discriminating against him on the basis of his race. The CTA moved for summary judgment on Jordan's Title VII and Section 1981 claims. For the reasons stated herein, summary judgment is granted in favor of the CTA.

## LEGAL STANDARDS

I. **Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence

---

[1] The Court granted the CTA's motion to dismiss Jordan's Section 1983 claim on March 21, 2003. (R. 28-1, Order.)

is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## II. Local Rule 56.1

The Court first addresses Jordan's failure to comply with the requirements of Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois. L.R. 56.1. Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The opposing party must then file "a concise response to the movant's statement" that includes, *inter alia*, "a response to each numbered paragraph in the moving party's statement." L.R. 56.1(b)(3)(A). "All material facts set forth in the [Rule 56.1] statement . . . will be deemed admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(B).

2

Jordan has failed to file a response to the CTA's summary judgment motion, thereby violating the Local Rules and the Court's scheduling order. The CTA filed its summary judgment motion on January 30, 2004. (R. 52-1, Def.'s Mot. for Summ. J.) The Court ordered Jordan to respond by March 10, 2004. (R. 55-1, Feb. 4, 2004 Minute Order.) The Court thereafter granted Jordan an extension of time, and ordered Jordan to file his response to the pending summary judgment motion by April 7, 2004. (R. 56-1, Mar. 10, 2004 Minute Order.) To date, Jordan has failed to file any response, despite having had ample time to do so.

Given that Jordan has failed to respond to any of the CTA's statements of material fact, the Court will deem admitted each of the CTA's statements of material fact that is supported by the record. *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, at *4 (N.D. Ill. Aug. 23, 2002). "A district court need not scour the record to make the case of a party who does nothing." *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989). Jordan's failure to comply with Local Rule 56.1, however, does not result in an automatic grant of summary judgment in favor of the CTA. The Court still must evaluate all facts in the light most favorable to Jordan, the non-moving party. *O'Donnell v. City of Chicago*, No. 02 C 1847, 2003 WL 22339285, at *1 (N.D. Ill. Oct. 14, 2003).

## BACKGROUND

Jordan, an African American, is a track maintenance worker for the CTA. (R. 53-1, Def.'s Rule 56.1 Statement, ¶ 34.) Trackmen inspect, construct, maintain, and repair the CTA's train tracks and the surrounding rights-of-way. (*Id.* ¶ 38.) The CTA hired Jordan on March 22, 1999. (*Id.* ¶ 34.)

3

## I. Jordan's Work Record

The CTA disciplined Jordan twice for excessive absences. (*Id.* ¶¶ 80, 90.) On December 8, 1999, Jordan received a written warning for missing 58 days of work. (*Id.* ¶ 82.) On May 10, 2001, Jordan received a second written warning for missing 111 days of work in the previous seven months. (*Id.* ¶ 92.) With each written warning, the CTA warned Jordan that additional absences could lead to further discipline up to and including discharge. (*Id.* ¶¶ 83, 93.) Jordan worked a total of only 55 days between January 21, 2000 and October 31, 2003. (*Id.* ¶¶ 88, 95, 97.)

## II. Jordan's Injuries

In September 1999, Jordan injured his back while carrying a railroad tie. (SAC ¶ 12.) He returned to work in November 1999. (*Id.* ¶ 12.) In January 2000, Jordan reinjured his back. (*Id.* ¶ 15.) In May 2001, Jordan suffered a series of anxiety attacks and took time off of work as a result. (*Id.* ¶ 18.) Jordan returned to work in August 2002. (*Id.* ¶ 19.)

## III. Derogatory Remarks

Jordan alleges in his SAC and testified in his deposition that Dean Heatter, who is white, called Jordan "collard green" on multiple occasions, remarked that Jordan (who drives a Cadillac) "needed a white [woman] to be complete," described as "monkeys" African Americans near a worksite in 1991, and once uttered the word "n-----" under his breath. (SAC ¶ 9; R. 53-1, Def.'s Rule 56.1 Statement, ¶¶ 177-80.) Heatter supervised Jordan for approximately seven days in 1999 and approximately two weeks in 2002. (R. 53-1, Def.'s Rule 56.1 Statement, ¶ 176.) Heatter testified in his deposition that he never made these statements to Jordan. (*Id.* ¶¶ 186-90, 194.)

4

Jordan further alleges in his SAC and testified in his deposition that James Blatz, a supervisor who is white, regularly referred to Jordan and other African-American employees as "you people." (SAC ¶ 10; R. 53-1, Def.'s Rule 56.1 Statement, ¶ 166.) Blatz testified in his deposition that he never referred to African-American employees as "you people." (R. 53-1, Def.'s Rule 56.1 Statement, ¶ 172.)

Finally, Jordan testified in his deposition that Joe Ryan, another supervisor who is white, told Jordan to "get his a-- over here," and used the term "you people." (R. 53-1, Def.'s Rule 56.1 Statement, ¶ 197.) Ryan testified in his deposition that he never referred to African-American employees as "you people." (*Id.* ¶ 207.) Ryan further testified that he yelled at Jordan to "get his a-- over here" because Jordan was talking to other employees when he should have been in an orientation meeting, not because Jordan was African American. (*Id.* ¶ 206.)

IV. **Allegedly Discriminatory Incidents**

Jordan alleges that Patrick Martin, a Roadmaster-in-training who is white, once ordered Jordan to show new employees how to put plates under the rail and that, when Jordan refused to do so after Martin jacked up a 100-pound rail, Martin allegedly told Jordan and others to get their "mother-f----ing a----" over and set the plates. (*Id.* ¶ 151.) Upon learning of the incident, Jordan's superior Carmen Amella told Jordan that he must follow orders and that the CTA could take him out of service for insubordination. (*Id.* ¶ 161.)

The second incident occurred on August 28, 2002 when Jordan returned to work after a 14-month medical leave. (*Id.* ¶ 199.) The CTA required Jordan to go through reorientation after his long absence, pursuant to CTA procedure. (*Id.* ¶ 201.) Jordan considered it a "hostile environment" to be "put with the new hires" in orientation. (*Id.* ¶ 202.) Jordan did not attend the

5

beginning of the orientation meeting, and when Jordan's supervisor Joe Ryan found Jordan talking with other CTA employees, Ryan yelled at Jordan to "get his a--" into the meeting. (*Id.* ¶¶ 203-04.)

## ANALYSIS

### I. Jordan Cannot Prevail On His Intentional Discrimination Claim

A plaintiff bringing a claim under Title VII can prove discrimination using either the "direct" method or the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-1061 (7th Cir. 2003). The Court applies the same standards to Title VII claims and claims brought under Section 1981. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998).

Jordan claims that "[t]he CTA discriminated against [him] by, among other things, assigning Jordan more physically demanding work responsibilities than similarly situated white employees, such as McNichols and Mark Cantone, failing to promote Jordan, favoring white employees whose work record were not superior to Jordan's, and assigning Jordan to less desirable shifts and work duties than similarly situated white employees." (SAC ¶ 22.) Jordan further claims that the CTA discriminated against him by "refusing to allow him track maintenance responsibilities that were within his job description but less physically demanding and by insisting that Jordan perform intense physical labor when machines, such as a crane, were on site and available to assist Jordan." (SAC ¶ 21.) Although it is questionable whether any of these actions constitute "adverse employment actions" within the meaning of employment

6

discrimination law,[2] the Court nonetheless addresses each of Jordan's claims.

    **A.    Stray Remarks Do Not Constitute Direct Evidence Of Discrimination**

Direct evidence is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997)). "Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti*, 349 F.3d at 1061 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).

Drawing all inferences in Jordan's favor, Jordan fails to produce any direct evidence of discrimination. The only evidence that might possibly qualify as "direct" evidence are the derogatory remarks that his supervisors allegedly made.[3] Jordan, however, fails to establish that these alleged comments were anything but stray remarks unrelated to an adverse employment action.

"[B]igotry, *per se*, is not actionable." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). There must be a link between the alleged bigotry and the adverse

---

[2] An adverse employment action involves a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1112 n.7 (7th Cir. 1998). "[N]ot everything that makes an employee unhappy is an adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

[3] The only evidence that his supervisors made any of the derogatory statements is Jordan's own deposition testimony. The supervisors testified in their depositions that they never made the statements. Because it is inappropriate to weigh conflicting deposition testimony on summary judgment, *Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003), the Court draws all factual inferences in Jordan's favor and presumes that the supervisors made the statements.

employment action at issue. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000). A comment made by a decision-maker, or one who provides input into the decision, is actionable only where it was made "(1) around the time of, and (2) in reference to, the adverse employment action complained of." *Gorence*, 242 F.3d at 762. There is no evidence that any of the alleged remarks were made by decision-makers near the time of or in reference to any adverse employment action at issue—if the remarks were made at all.[4] Stray workplace comments unrelated to an alleged discriminatory employment decision are insufficient to support an inference of discrimination. *Schreiner v. Caterpillar, Inc.*, 250 F.3d 1096, 1099 (7th Cir. 2001). Accordingly, there is no direct evidence of discrimination.

**B. Jordan Cannot Establish A *Prima Facie* Case Of Discrimination Under The Burden-Shifting Method Of *McDonnell Douglas***

Jordan fares no better under the indirect method of *McDonnell Douglas*. Under the *McDonnell Douglas* burden-shifting method, he must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination, Jordan must show that (1) he is a member of a protected class, (2) he reasonably performed to the CTA's expectations, (3) he was subject to an adverse employment action, and (4) he was treated differently from similarly situated employees who were outside of his protected group. *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817.

If Jordan establishes a *prima facie* case of discrimination, the burden of production then shifts to the CTA to articulate a legitimate, nondiscriminatory reason for its employment

---

[4] Again, the Court notes that Heatter, Blatz, and Ryan vigorously denied having made the alleged statements.

8

decision. *Id.* Once the CTA submits this proffered reason, the burden then shifts back to Jordan to show that the CTA's stated reason is merely a pretext for discrimination. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993). This analysis applies to both Title VII and Section 1981 claims. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 637 n.1 (7th Cir. 2001).

### 1. Jordan Cannot Establish That He Reasonably Performed To The CTA's Legitimate Expectations

The undisputed facts show that Jordan was not meeting the CTA's legitimate expectations. Jordan received two written warnings for "Excessive Absenteeism," one on December 8, 1999, and another on May 10, 2001. The CTA disciplines employees for "Excessive Absenteeism" on a "no-fault" basis, with the exception of absences protected under the Family and Medical Leave Act, which is not at issue here. The CTA's Corrective Action Guidelines provide that:

> Excessive absenteeism occurs when the number of entries (instances) or total number of days lost becomes excessive. It is recognized that an employer has a right to expect that the employee will come to work. And because this guideline does not affect the right of an employee to receive disability payments for a legitimate, documented illness, we consider the guideline to be "no fault." Administrative action, therefore, is taken even if, through no fault of his or her own, the employee is frequently absent from work (with the exception of absence covered by FMLA as explained below.)

Jordan received a copy of the CTA's Guidelines in 1999. Given his work record, Jordan cannot establish that he was meeting the CTA's legitimate expectations as outlined in the Corrective Action Guidelines. *See Shirley v. Quebecor Printing*, No. 02 C 50282, 2003 WL 22326467, at *1 (N.D. Ill. Oct. 8, 2003) (granting summary judgment for employer where employee with excessive absences failed to meet his employer's legitimate expectations). Jordan worked a total

9

of only 55 days between January 21, 2000 and October 31, 2003. For this reason alone summary judgment is granted in favor of the CTA as to Jordan's discrimination claims.

2. **There Is No Evidence Of Pretext**

In any event, even if Jordan were able to establish a *prima facie* case of discrimination, his discrimination claims nonetheless fail because he cannot establish that the CTA's proffered reasons for taking the alleged adverse employment actions were pretextual. "Pretext means a dishonest explanation, a lie rather than an oddity or error." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). Thus, to demonstrate pretext, Jordan "must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). "Without direct evidence of pretext, the plaintiff must prove pretext indirectly by showing one of the following: (1) Defendant's explanation of Plaintiff's discharge had no basis in fact, (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the [allegedly discriminatory action]." *Id.* (citation omitted).

In this case, Jordan has presented no evidence to show that the CTA's reasons for giving trackmen with better work records than Jordan the reassignments that Jordan requested were pretextual. Blatz testified that when Jordan asked Blatz to assign him to less physically demanding tasks such as inspecting track or delivering material, Blatz gave the assignments to other trackmen because of Jordan's poor work record. (R. 53-1, Def.'s Rule 56.1 Statement, ¶¶ 41, 214.) Further, the CTA explained that it never transferred Jordan to a different department within the CTA because Jordan never applied for such a transfer. Similarly, the CTA explained

10

that it did not promote Jordan due to his poor work record.

Jordan has not produced any evidence showing that the CTA's explanations had no basis in fact or that the CTA lied about its "real" reason for taking these actions. This is a second, independent basis on which the Court grants summary judgment in favor of the CTA on Jordan's discrimination claims.

## II. Jordan Cannot Prevail On His Hostile Work Environment Claim

Jordan bases his hostile work environment claim on the racially derogatory remarks that Heatter, Blatz, and Ryan allegedly made in reference to Jordan and other African Americans, and on the two incidents involving Martin and Ryan.

To survive summary judgment on a hostile work environment claim, "a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII." *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003) (quoting *Russell v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 342-43 (7th Cir. 2001)). "Title VII protects a worker against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S. Ct. 367 (1993)). "The workplace that is actionable is the one that is 'hellish.'" *Logan*, 259 F.3d at 641 (citation omitted).

In evaluating whether a workplace is hostile or abusive, the court must look at all the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is

11

physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23. "[O]ffhand comments and isolated instances (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275 (1998). These standards "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Haywood v. Evergreen Motor Cars, Inc.,* No., 02 C 6408, 2003 WL 21418248, at *6 (N.D. Ill. June 18, 2003).

With these standards in mind, it is clear that no reasonable jury could conclude that the alleged comments and incidents created an objectively hostile work environment. First, Jordan has failed to present any evidence that the statements were actually made, other than his own deposition testimony. Second, even if Jordan had demonstrated that the CTA employees made the statements, such statements, although offensive, were not physically threatening, and there is no evidence that the comments affected Jordan's ability to do his job. Further, the comments were isolated and infrequent—the comments were made over a period of four years. As for the comments about "you people," Jordan testified that Blatz used the term in a laughing manner and that Jordan did not know why Blatz or Ryan used that phrase. As for Heatter's alleged use of the "n" word, Jordan testified that he heard it under Heatter's breath when Heatter thought Jordan could not hear him, and Heatter vigorously denied ever using that word. Although bigoted and reprehensible, this offensive utterance—if it was made—does not create an objectively hostile work environment. "The mere utterance of a racial epithet that engenders offensive feelings does not sufficiently affect the conditions of employment to create a hostile work environment." *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 997 (7th Cir. 2002).

12

Moreover, most of the comments at issue were not racial at all but were related to Jordan's insubordination. Similarly, as for the two incidents, the evidence shows that these incidents were the result of Jordan's insubordination rather than his race. Martin testified that he yelled at Jordan because Jordan was insubordinate. Ryan testified that he yelled at Jordan to "get his a-- over here" not because of his race, but because Jordan was supposed to be in the orientation meeting. No evidence contradicts their testimony.

There is simply no evidence from which a reasonable jury could conclude that the CTA subjected Jordan to a hostile work environment. Accordingly, summary judgment is granted as to Jordan's hostile work environment claim.

## CONCLUSION

The Court grants the CTA's motion for summary judgment in its entirety. Summary judgment is granted in favor of the CTA as to Jordan's discrimination claims because Jordan cannot establish that he was meeting the CTA's legitimate expectations at the time of the alleged adverse employment actions and because there is no evidence that the CTA's proffered explanations were pretextual. Summary judgment is granted in favor of the CTA as to Jordan's hostile work environment claim because there is no evidence that the CTA subjected Jordan to an objectively hostile work environment.

DATED: May 24, 2004

AMY J. ST. EVE
United States District Court Judge

13